# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

ROSETTA DIXON                                                                 PLAINTIFF

v.                                         3:06CV00008-WRW

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION                              DEFENDANT

## ORDER

Plaintiff appeals the Social Security Administration Commissioner's decision to deny her claim for Supplemental Security Income benefits.[1] Plaintiff challenges the Administrative Law Judge's ("ALJ") determination that she retained the residual functional capacity, and, therefore, was not disabled. Both parties have filed appeal briefs. In this judicial review, I must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.[2] For the reason below, the Commissioner's decision is AFFIRMED.

**I.**      **Procedural Background**

Plaintiff filed her current application for Supplemental Social Security Income on September 24, 2002, claiming that she had been disabled since September 24, 2002 due to depression, carpal tunnel syndrome, and left shoulder pain.[3] Her claim was denied initially and on reconsideration.[4]

---

[1] 42 U.S.C.A. § 1381a.

[2] 42 U.S.C. § 405(g).

[3] Tr. 10.

[4] Tr. 58-61, 64-65.

A hearing was requested and held before an ALJ on October 5, 2004.[5] The ALJ issued an unfavorable decision on June 21, 2005.[6] The Appeals Council declined review of the ALJ decision on January 13, 2006.[7] Plaintiff appealed the ALJ's decision by filing a Complaint in this Court on January 2, 2006.[8]

## II.  Summary of the Evidence

Plaintiff, born September 17 1960, was 44 at the time of her application for Social Security Income benefits, which qualifies her as a "younger person."[9] She has a high school education and no past relevant work experience.[10]

Plaintiff last job was on an assembly line for Milwaukee Electric Tool Corporation, which the vocational expert ("VE") described as "sedentary work in a factory setting."[11] Plaintiff also worked as an interviewer for Arkansas State Employment Department. The described this job as "semi-skilled sedentary work."[12] Plaintiff testified that she occasionally helps out at her mother's restaurant where she serves drinks and acts as the cashier.[13]

---

[5] Tr. 449-480.

[6] Tr. 8-15.

[7] Tr. 4-6.

[8] Doc. No. 2.

[9] 20 C.F.R. § 404.1563(c) (defining younger person as someone under 50).

[10] Tr. 12; *see also* 20 C.F.R. § 404.1565.

[11] Tr. 474.

[12] *Id.*

[13] Tr. 463-464.

On February 21, 2001, Plaintiff underwent a mental evaluation by Dr. Mary Ziolko, a psychologist.[14] Dr. Ziolko remarked that Plaintiff was able to drive around town and "does pretty good with . . . cleaning, cooking, and laundry."[15] Plaintiff was diagnosed with major depression, single episode, moderate and found to have below average concentration.[16]

On March 23, 2001, Plaintiff underwent a consultative physical exam by Dr. Shalendar Mittal.[17] Plaintiff complained of constant back, knee, abdominal discomfort as well as intermittent left shoulder pain.[18] Plaintiff alleges that she cannot stand for more than four to six hours a day and no more than 45 minutes in an hour because of shoulder, leg, and back pain.[19] Plaintiff also claims that she cannot sit more than an hour or two at a time.[20] Plaintiff maintains that the pain in her hands is such, that she has to rest every twenty minutes to relieve the pain.[21] Despite her assertions, Dr. Mittal opined that Plaintiff "was able to perform essentially all of the activities that she was asked to do without any significant limitations or restrictions."[22] He then added, " I cannot really see any

---

[14]Tr. 184.

[15]Tr. 189.

[16]Tr. 189-190.

[17]Tr. 191.

[18]*Id.*

[19]Tr. 469.

[20]*Id.*

[21]*Id.*

[22]*Id.*

particular defects as such which would limit her ability to perform the usual tasks required for gainful employment."[23]

From December 1999 through April 2002, Plaintiff regularly saw Dr. James Hudson. During this time, Dr. Hudson treated Plaintiff for the following: obesity, general malaise, lower back pain, sinusitis, bronchitis, headaches, arthritic knees and ankles, depression, insomnia, numbness in her extremities, overactive bladder, irritable bowel syndrome, and incontinence.[24] Also during this time, Plaintiff was being treated for the same illnesses and for depression at the Central Arkansas Veterans Healthcare System ("CAVHS").[25] Plaintiff's depression was treated with the following medications: Paxil, Zoloft, Hydorxyzine, Trazodone, and Wellbutrin.[26]

In February 2002, a doctor at CAVHS diagnosed Plaintiff with bilateral carpal tunnel syndrome and prescribed splints.[27] In October 2002, Plaintiff was diagnosed by the Blytheville Internal Medicine Associates with osteoarthritis and carpal tunnel syndrome.[28] Then, in November 2002, Plaintiff was seen by the Psychiatric Clinic of a local VA, where she reported sleeping only

---

[23] *Id.*

[24] Tr. 204-211.

[25] Tr. 225-297.

[26] *Id.*, WebMD, http://www.webmd/drugs - (drugs regularly prescribed to treat depression).

[27] Tr. 236.

[28] Tr. 299.

two hours a night and experiencing crying spells, increased appetite, and decreased energy.[29] She was diagnosed with Dysthymia.[30]

In March 2003, Plaintiff underwent a second mental status exam by Dr. Ziolko.[31] Dr. Ziolko found no limitations in Plaintiff's ability to concentrate, a notable difference since the 2001 finding of below average concentration.[32] Dr. Ziolko remarked that Plaintiff "doesn't cooperate with medical advice as she should . . . ."[33] Ultimately, Dr. Ziolko found that Plaintiff's "ability to understand, to carry out and remember instructions, and to respond appropriately to supervision, coworkers, and work pressure in a work setting . . . a little below average."[34] Dr. Ziolko diagnosed Plaintiff as suffering from Depressive Disorder, NOS, and found that there was no evidence of exaggeration or malingering.[35] In November 2003, Plaintiff was diagnosed with irritable bowel syndrome and GERD. [36]

---

[29]Tr. 225.

[30]WebMD, *supra*, Dysthymia - "sometimes referred to as chronic depression, is a less severe form of depression but the symptoms linger for a longer period of time."

[31]Tr. 320.

[32]Tr. 325.

[33]Tr. 324.

[34]Tr. 325.

[35]*Id.*

[36]*See* WebMD, *supra*, GERD - "gastroesophageal reflux disease - a syndrome that permits retrograde flow of acidic gastric juice into the esophagus."

## III. Standard of Review

The scope of review of an ALJ's decision is narrow.[37] The Commissioner's decision must be affirmed if it conforms to the law and is supported by substantial evidence on the record as a whole.[38] Substantial evidence is relevant evidence that reasonable minds might accept as adequate to support the decision.[39]

Substantial evidence "on the record as a whole" requires consideration of the record in its entirety, taking into account both "evidence that detracts from the Commissioner's decision as well as evidence that supports it."[40] The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial."[41]

A balancing test is used to assess contradictory evidence.[42] But, the evidence presented to the ALJ, should not be re-weighed[43] or given a *de novo* review.[44] Instead, if, after reviewing the evidence and it is "possible to draw two inconsistent positions from the evidence and one of those

---

[37]*Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005); *Bailey v. Apfel*, 230 F.3d 1063, 1065 (8th Cir. 2000); 42 U.S.C. § 405(g).

[38]*Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003); *Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998).

[39]*Hunt v. Massanari*, 250 F.3d 622, 623 (8th Cir. 2001).

[40]*Cox v. Barnhart*, No. 06-2226, 2006 WL 3751503, *3 (8th Cir. Dec. 22, 2006).

[41]*Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003).

[42]*Sobania v. Secretary of Health & Human Serv.*, 879 F.2d 441, 444 (8th Cir.1989) (citing *Steadman v. S.E.C.*, 450 U.S. 91, 99 (1981)).

[43]*Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir.1995)).

[44]*Roe v. Chater*, 92 F.3d 672, 675 (8th Cir.1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)).

positions represents the agency's findings, [the court] must affirm the [Commissioner's] decision."[45]

The burden rests with a claimant to prove her disability by establishing a physical or mental impairment lasting at least twelve months that prevents her from engaging in any substantial gainful activity.[46] A claimant must provide medical findings that support each of the criteria for the equivalent impairment determination.[47]

Section 423(d) of the Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[48] A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."[49]

**IV.  Discussion**

The ALJ considered Plaintiff's impairments under the required five-step sequential evaluation process.[50]  First, he found that Plaintiff had not engaged in substantial gainful activity since filing her application.[51] Next, the ALJ found that, based on the medical evidence, Plaintiff's depression,

---

[45]*Id.* (quoting *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

[46]*Baker v. Apfel*, 159 F.3d 1140, 1143 (8th Cir. 1998).

[47]*Anderson v. Apfel*, 996 F. Supp. 869 (E.D. Ark. 1998).

[48]42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505.

[49]42 U.S.C. § 432(d)(2)(A).

[50]20 C.F.R. § 404.1520.

[51]Tr. 14.

carpal tunnel syndrome, urinary incontinence, and left shoulder pain are "severe,"[52] but did not create an impairment or combination of impairments that met or equaled a listing.[53]

The fourth step required the ALJ to determine whether Plaintiff had sufficient residual functional capacity, despite her impairment, to perform her past work. The ALJ concluded that Plaintiff retained the residual functional capacity to perform simple skilled or semi-skilled light work.[54] The ALJ explained that even though Plaintiff "is restricted from assembly work, must wear splints, . . . often requires bathroom breaks," and . . . " experiences mild to moderate pain," waitressing and cashier jobs are all within her limited abilities.[55] Based on the above, the ALJ found that Plaintiff does not suffer from a "disability" as defined in the Social Security Act.[56]

Plaintiff argues that the vocational expert's ("VE") findings that she can perform light to sedentary work as a cashier or waitress is erroneous because she cannot comfortably reach. Citing to the DOT, Plaintiff notes that light cashier and waitressing jobs both require frequent reaching. None of her treating physicians put any physical limitations on her. Moreover, it is well-settled that, "[w]hen expert testimony conflicts with the DOT, and the DOT classifications are not rebutted, the DOT controls."[57] Nevertheless, the controlling authorities also make clear that "[a Plaintiff's] reliance on the DOT as a definitive authority on job requirements is misplaced, for DOT definitions

---

[52] 20 C.F.R. § 416.920(c).

[53] Appendix 1, Subpart P, Regulations No. 4.

[54] Tr. 15.

[55] *Id*.

[56] Tr. 15, *see also* 20 C.F.R. §§ 404.1520(f) and 416.920(f).

[57] *Flaherty v. Halter*, 182 F. Supp. 2d 824, 849-850 (D. Minn. 2001); *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir.1997); see also, *Montgomery v. Chater*, 69 F.3d 273, 276 (8th Cir. 1995); *Smith v. Shalala*, 46 F.3d 45, 47 (8th Cir. 1995).

are simply generic job descriptions that offer 'the approximate maximum requirements for each position, rather than their range.'"[58] "The DOT itself cautions that its descriptions 'may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities.'"[59] "In other words, not all the jobs in every category have requirements identical to or as rigorous as those listed in the DOT."[60] Therefore, the ALJ's reliance on the VE's finding that she could perform light sedentary cashier and waitressing work is supported by the evidence.

Plaintiff next argues that the ALJ erred by not giving greater weight to her mother's corroborating testimony. However, the ALJ did note her mother's testimony, but since it provided no new information, there was no reason to give it greater weight. "It is for the ALJ as trier of fact to give the testimony of family members and friends such credence as he deems warranted."[61]

Plaintiff challenges the ALJ's assessment of her credibility. She argues that she provided ample medical evidence to support her claims of depression, chronic hand and shoulder pain, and stomach and bladder issues. An ALJ may discredit subjective complaints of pain if they are inconsistent with the record as a whole.[62]

> The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: 1) the claimant's daily activities; 2) the duration, frequency and intensity of the pain; 3)

---

[58]*Id.* (quoting *Hall v. Chater*, 62 F.3d 220, 259 (8th Cir. 1995)).

[59]*Id.* (quoting Dictionary of Occupational Titles, vol. 1, at xii).

[60]*Id.*

[61]*Kisling v. Chater*, 105 F.3d 1255, 1258 (8th Cir. 1997).

[62]*Barry v. Shalala*, 885 F. Supp. 1224, 1223 (N.D. Iowa 1995).

precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; 5) functional restrictions.[63]

The medical evidence does not support Plaintiff's subjective complaints, but supports the finding that Plaintiff could perform certain types of work. Furthermore, the ALJ noted that allegations of disabling pain may be discredited by evidence of daily activities inconsistent with alleged level of pain.[64] Plaintiff admitted to being able to drive around town, cooking cleaning, attending classes at a local community college and working two hour shifts at her mother's restaurant. Moreover, in her application, Plaintiff noted that she shopped for groceries and clothes, ironed, washed dishes, and paid bills. As the ALJ observed, many of these activities require Plaintiff to use her hands, a contrast to Plaintiff's allegations of severe hand pain. Also, although diagnosed with carpal tunnel syndrome, Plaintiff's doctors prescribed nothing more than wearing splints to relieve the discomfort. Plaintiff required only conservative treatment for her pain, and the record shows that Plaintiff can sit stand from four to six hours a day - - no more than 45 minutes in an hour - - and can sit an hour or two at a time.[65] .

Plaintiff suggests that the hypothetical posed to the vocational expert was inadequate because it assumes physical capacities not supported by the evidence. Plaintiff challenges the ALJ's finding that she had the residual functional capacity to lift/carry 10-20 pounds, sit up to 6 hours in an 8 hour day, stand/walk six hours in an 8 hour day, and reach and handle things occasionally. Plaintiff's

---

[63]*Id*. (citing *Polaski v. Heckler*, 739 F.2d 1320, 1321-22 (8th Cir. 1984)).

[64]*Gray v. Apfel*, 192 F.3d 799, 804 (8th Cir. 1999).

[65]*Id*.

argument seeks to place the burden of proof on the Commissioner. It is Plaintiff's burden, and not the Social Security Commissioner's burden to prove Plaintiff's residual functional capacity.[66]

An ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all the evidence.[67] Dr. Mittal noted "the patient complains of intermittent left shoulder pain, but it is not really a major factor as she forgot to mention it initially."[68] In May 2002, Plaintiff's treating doctor stated that she had "many somatic complaints."[69] An x-ray of Plaintiff's lumbar spine in March 2000 showed normal results.[70] An MRI of Plaintiff's left shoulder performed on September 17, 2004, showed no significant abnormalities.[71] The ALJ properly examined the evidence in the record, and his conclusion is supported by substantial evidence.

**V.  Conclusion**

After careful consideration of the record as a whole, the ALJ's decision was supported by substantial evidence and is AFFIRMED.

IT IS SO ORDERED this 29th day of March, 2007.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[66]*Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003).

[67]*Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 19950.

[68]Tr. 191

[69]Tr. 308.

[70]Tr. 296.

[71]Tr. 440.